Thank you and thanks everybody for agreeing to do this remotely. I hope it's convenient rather than a disappointment to not be all together in person. Everybody understands the rules. Mr. Weisshaus, you'll have four minutes to begin and then you've saved one minute for rebuttal and obviously we may have some questions for you but you can go ahead and begin your argument. Mr. Weisshaus Good morning, court. Where I am right now is already evening so may it please the court. My name is Yorl Weisshaus, I'm the appellant. Rather than rehashing all the arguments, I'd like to point on one simple issue. This case, ask the question, the way the complaint presented it and the way the appellant's brief asks is whether the state has any authority to exercise the police powers of blockading the exit door of customs and forcing everyone to register with the state. This is a simple review. If the state has the authority to do that, then whether there's a public health crisis or not makes no difference. They exercise something, they have authority. If they have no authority, then the question is under what authority can they exercise it even under a public health issue. The state has presented no argument in their defense and they've made no argument to address that point and neither did the district court and rather they twisted the issue as involving a public health crisis. Again, I'll admit, if they have the authority to blockade an exit door of customs, then they can do it at any time. It doesn't matter whether it's a public health issue or not. But because they do not have the authority. Was the state, Mr. Weisshaus, was the state really blocking the entry or was it requiring information for purposes of contact tracing? No, they were actually blocking the door. When I came out from the exit door, there was a barricade right there and a guard standing me, not letting me go any further any place until I signed that form. It was not just me, it was hundreds of other people there and they had to go through the exact same thing. There were armed guards and they didn't let anyone pass. That's the question. The question wasn't whether they asked me to sign a form. The question was they exercised the police power of blockading the door. They had no authority to do. That's precisely the point that brought this, why I brought this case. It wasn't just about asking, oh, the state requires me to fill out a form and that's what it is. And there were people there providing the forms to everyone exiting the door. That wasn't the issue. The issue is they physically blockaded, not allowing anyone to go anywhere, anyhow, no excuses, nothing. They wanted their way in, according to my understanding from Henderson, is they do not have the authority. The state does not have the authority to blockade, to force people at a point of entry to register with the state for the purpose of cataloging them, whether it's for public health issue, whatever it is, the state does not have that authority. I'd like to point out in terms of standing, because that's the issue that the appellee is making a hay of it, that since the executive order has been rescinded, therefore there's no standing, according to their mind. But that's wrong because it's not the executive order that I'm challenging. I'm not challenging the form that they forced me to fill out. I'm challenging the exercise of police power at the exit door of customs. If they had the authority to exercise that police power, the form, the executive order is irrelevant because my case is over. My case is the fact that they do not have that authority to blockade the exit door of customs. That's the same power. Whatever it is, they have no authority to use that police power. Customs has just cleared me to come into the United States, comes in, the state governor says, we don't like that, we want you to register separately with the state. That's the problem. And because Governor Cuomo's attorneys are addressing the issue as if this thing is over, that they're not gonna, they're not planning to institute the executive order again or have that form, that's not a point. If the state has the ability to exercise that police power, or as they discovered now with the district court's decision that they can exercise that police power, what will happen is they can do it now anytime. Okay? The point of this case is that the constitution limits the authority of the state government to have any regulatory power over the ports of entry. While the federal government can invite the state, and they often do, the state cooperates often with the federal government. But it cannot be that the state comes and usurps the power and says, we don't like how the federal government is handling immigration during COVID, but we are going to institute a new set of rules and we're going to force our own registration of everyone who... Mr. Whitehouse, thank you. Sorry to cut you off. I think we take your point and we're going to hear from you again after the state's had an opportunity to argue. So why don't we shift gears? I realize I never actually formally called the case. It's Whitehouse versus Hochul, 2164. Do that right in the middle. And we have Mr. Magee for the state. Mr. Magee. May it please the court, Daniel Magee on behalf of Governor Hochul. The court should dismiss this appeal for the simple reason that the case is moot. There's no dispute that the executive order that authorized the use of the travel form that plaintiff is challenging here was rescinded in June of 2021, which was almost 17 months ago. And the health form is no longer in use. And there's really no reasonable expectation that it's going to be reinstated in the near future or really at any time. Mr. Magee, can I ask, I'm sorry to cut in, since we have limited time. We have this issue of what happened at the airport, but one of the things that generated was this completed form with personal information of an individual that's now in the state's files somewhere. And I see the declaration from the Department of Health saying, if the completed traveler health form indicates that the traveler is exempt from the advisory for any reason, it does not utilize their information for any further purpose. Am I correct in understanding that this falls into that category, that this traveler was exempt from the traveler advisory? That's correct, Your Honor. I mean, according to the declaration, this information was not retained by the state because he was exempt from the advisory. He was just passing through New York and therefore wasn't subject to it. You just said something that's slightly different from my understanding and it's important to me. So again, I'm sorry to interrupt, but you said it's not retained by the state. And I didn't see that in the declaration. What I saw in the declaration is that the department does not use their information for any further purpose, but I didn't see anything that said that they sort of expunged the information or deleted it from their files. Can you get me some clarity on that? Yes. So you're correct. The declaration says it's not used for any purpose. My understanding is that it's also not, I mean, I can't rule out the possibility that there is a box somewhere where this form was stored in paper, not somewhere that could be easily accessible. But in terms of like whether his information could be called up on a that means that it's not used for any purpose, but I can't rule. I don't know that the piece of paper was destroyed or is stored somewhere, but even if it's stored somewhere, it's not easily accessible. Is there a law or regulation or something that if it is in a box somewhere and you can't rule that out, that tells us what the status of that is as far as is it a Is there something, there's a representation that the information is kept confidential, at least when it's entered into the computer, but I'm just trying to figure out other than this paragraph 15 of the declaration, if we have any more understanding about where Mr. Weishaus's personal information is and what the legal parameters are that governance use. Yeah, I believe that the, under the executive order that is, it's kept confidential. I don't know that there is a, you know, further regulation or law in the state that governs the information on the form. I could definitely try to figure that out and inform the court afterwards, if that would be helpful. I do know, I mean, according to the declaration, it is kept confidential. And there's really, you know, his claim that it could be used at a later date is not enough for standing in any event. I mean, the Supreme Court and the Clapper decision rejected the argument that that's a concrete injury to say that at some speculative later date, the information that is possibly retained might be used against me. So, you know, even if the, you know, even if this information was retained, that's not enough for standing, and the case would still be moot in that case. Well, but if the claim is that the state had no right to take the information in the first place, isn't the state's continued possession of the information an injury? I think that not for purposes of mootness, however, you know, he's challenging that the information was taken from him. He's not, there's no, I don't believe that the possession itself is the injury. It's that he's claiming that it could be used at a later time that he's claiming is the injury here. That there's no, you know, that's not a concrete, certainly impending injury, the speculative claim that, you know, information on the form, which isn't, you know, highly personal information, anything like that, that that might be used at some later date, that's not enough for standing or to render the case still live for mootness. I see that my time is up. If there are no further questions, I thank the court. I sort of drowned out my colleagues. Are both of you prepared to move forward? Thank you. Okay, Mr. Weishaus, back to you. Yes, I'd like to bring to the court's attention this, this idea of retained. It's hardly believable, this idea that a clerk at a lower level in government office can decide to destroy documentation. And there'll be no statute for that authorization. The lower court was never able, the parties were never able to brief that issue because the whole issue of mootness only arised after the district court's final disposition. So that area was completely undeveloped, because we never got a chance to brief the court on that issue. But I'd like to address to the point of Ms. Maggie on this, that it's a future harm, or it's speculative harm, it's not so. The both amended complaint and the original complaint asked for injunctive relief to enjoin the use of their form. That particular, the information from their form, the question is, how soon they might use it, how soon they might not use it, I don't even know. Because they have taken information, I don't know what the purpose of it is. I never got to get to discovery to know where this information went. That's, that's an area that is completely factual, it would, it is, it is not appropriate on a preemptive motion to dismiss, to know, because there may be necessary that particular element, or even limited discovery, just knowing whereabout this information went to, to be able to completely evaluate whether the injury is speculative or not. So far, I have made the allegation, the plaintiff has made the allegation, and the plaintiff has, has the right to, to have his right, his claims presumed as true at this pleading stage. Mr. Reises, excuse me for just a minute. So just looking at the form, this had to do with your status on the day that you were entering the country some years ago now, is that right? It's almost two years ago. And I'm just having a little difficulty understanding what use your this, the information on this form might bear on anything in the future. And so how it could be used? And so could you explain? Yes, what has happened is I'm traveling, for example, Europe right now, and I'm doing personal familial trips, and it has a lot of personal information that I didn't want to reveal to the state. I had personally, personal information, I mean, its name, date, your birth date, location, whom did I, and if I remember correctly, it's also asking if, with whom I interacted, if where I stayed. I don't think it, I think it was, is, you know, destination. I'm looking at the form, telephone number, children and dependents for, I mean, you know, traveling with you. I don't think it, you know, are you using a plane or ship? Have you had any symptoms? Are you an essential worker? I'm not seeing that it asked to disclose associates or any, you know, kind of private information that wouldn't otherwise be on the public record except for your health status. Okay, can I pull up the form? Yeah, it might take me a minute. I just would like to pull up the form. So I can look at it again. It asked what hotel you would be staying at if you were coming into the city. Ms. Carney, can you give me an appendix page? Are you looking in the actual appendix? I'm looking, what I have is page 40 and 41. I don't have the appendix site. All right, thanks. Sorry. I got it. It's 40 to 41 in the joint appendix. So it's asking me for dependents. It's asking me, list the state and country where I've been. This information isn't necessarily public record. It is a personal information. It just was your day. I mean, that's your entry information. It's where have you been before coming, which is your travel information. Where did you just immediately come from? It's not asking for, I mean, that seems to me kind of standard information that gets asked when you're coming on international flight into the United States in any event. So I'm not seeing anything particularly private or, and as to the private information, the health information, it seems vastly out of date and irrelevant now. Well, that information has two parts to it. When customs asks me those questions, I expect to answer those questions because they have the authority to ask me those questions and I will comply. But when the state does not have the authority and asks me questions, whether it's relevant today, it's not relevant. It is taking away that constitutional right that I have that to be free from that kind of questioning. And that questioning where I'm going overseas, it's completely irrelevant to the state. And the issue is that at the time, and it still is relevant to me, is that I have personal places where I went to overseas and I went to several countries and I didn't want to have that information shared with the state. So it's asking the last 14 days, have you been in a state, not boarding or country that has a high COVID risk? And yes, and then it lists what states have you been with a high COVID risk? So it's just the health. It's not asking every place that you've been. It's asking, have you been places where there was a particular risk, right? Well, it says in last 14 days, do you have been to a state, not a state of New York or country designated under CDC level two. Okay. At the time, most countries were under some level of risk that were considered level two or level three. And there was restrictions and there's still some restrictions in place. For example, tourists cannot come into the country without vaccination or without, even if they are COVID negative and it doesn't matter whether the status of the country is at low risk. But at the time, most of the world was under some level of, some were more extreme, some were more, but the one level one, there were still level two or higher. Sounds like there's no more questions. So thank you, Mr. Whitehouse. We appreciate your arguments, Mr. Magee, we appreciate yours. We'll take it under advisement and get a decision out when we can. Thank you. Thank you.